## Case No. 14,770.

### UNITED STATES v. CHABOYA.

[Hoff. Op. 59; Hoff. Dec. 107.]

District Court, N. D. California. 1859.

MEXICAN LAND GRANT — LONG AND CONTINUOUS OCCUPATION—VALIDITY.

HOFFMAN, District Judge. It appears from the proofs in this case that on the 11th of May, 1839, Pedro Chaboya presented a petition to Gov. Alvarado. asking for a concession of the land which he then occupied by the permission of the prefecture of the district, and stating that the reclamations against him, addressed to the prefecture by

the residents of the pueblo, were absolutely destitute of justice, as he in no way prejudiced their rights, and the land was vacant. On the 20th May, 1839, Gov. Alvarado, by a marginal order, referred the matter to the prefecture, and directed that the interested party "should continue in the possession in which he finds himself, while the suitable procedure is going on." On the 25th May, 1839, the prefect reports that the petitioner ought to be excused from the usual procedure, as the prefecture had already taken, and perhaps dispatched, it conformably to his solicitation. The prefect then goes on to observe that the reclamations which the residents of the pueblo have made, and of which he had verbally informed the governor, had no other design than to remove Chaboya from the place he had occupied for many years, on account of antipathy or prejudice. With this report, the pro expediente terminates. In May, 1844, Chaboya appears to have made a second application for two leagues of land, which, however, seems to have been a different tract from that upon which in 1839 he had already been living several years. The expediente in this last case terminates with a report by Francisco Guerrere, dated February 14, 1846, and the grant seems never to have been issued. The claim before the court is for the lands first petitioned for, and which the governor gave him permission to continue to occupy.

It appears by the testimony of Antonio Suñol that he has known the claimant for forty years; that he (claimant) has lived at the rancho called "Posa de San Juan Bautista," where he now resides, ever since 1837; that in that year he had two or three houses upon it, and 400 or 500 acres fenced in, which he has continued to cultivate up to the present time; that he now resides in one of the houses then upon the land, and that he has lived there to this day with his wife and seven or eight children. The witness states with some exactness the boundaries of the land occupied by Chaboya; that they were well known and recognized by his neighbors, the Bernals and Narvaes; that at the "rodeos" of the adjoining ranchos the boundaries of the ranchos were mutually recognized and respected; and that during all the time the pueblo never molested him or denied his title. On his cross-examination, the witness states that he knows the boundaries of Chaboya's land by knowing those of the surrounding ranchos; and that when he (witness) had cattle on Bernal's rancho, they never, when giving a rodeo on the latter rancho, crossed the boundary line of Chaboya. James Alexander Forbes testifies that he recollects when Chaboya occupied his land two or three persons opposed his doing so, on the ground that it belonged to the pueblo of San José; that the dispute was referred to the prefect, who settled it in favor of Chaboya, on the report of the subprefect Suñol; that after this Chaboya was not mo-

lested, and has continued to occupy the land to this day. None of the facts testified to by these witnesses are denied or disputed; at least no testimony has been taken to contradict them. The case presented therefore is: Has the claimant by the permission to occupy, given by the governor, followed by his long occupation and cultivation of the land, such an equity as the United States ought to respect? It appears to me that he has. When the United States forces took possession of California in 1846, Chaboya was found, with his wife and family, living upon, cultivating and claiming to own a small piece of land (for Suñol swears it is about a league in extent), of which he had the undisputed possession for about nine years. Though he had never obtained a formal concession, yet he had occupied it first by permission of the prefect, and then by the permission of the governor, obtained seven years before. The governor himself testifies that he would have given Chaboya a definitive title if he had asked for it; thus negativing the idea that Chaboya failed to obtain it by reason of the governor to grant. From Chaboya's first occupation of the land to the present time, a period of twenty-two years has elapsed, during which he has been living on it with his wife and numerous family. It seems to me that such an ancient possession the United States are bound to respect.

If the equities of the case be alone considered, this claim has a far more substantial foundation than many of the claims which, under decisions of the supreme court, this court has felt itself obliged to confirm. It cannot be pretended that the bare reception of a title paper signed by the governor for lands which the petitioner never, until long after the conquest, occupied, or, perhaps, even saw, could create so strong an equity as the ancient occupation and cultivation, by permission of the authorities and with the acquiescence of all the neighbors, which are proved in this case. I therefore think that the claim should be confirmed for the tract of land occupied by the claimant, according to the boundaries thereof, as shown in the deposition of Antonio Suñol. A decree must be entered accordingly.

[For a subsequent proceeding in this litigation, see Case No. 14,769.]